IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ERPELDING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SHAWN R. ERPELDING, APPELLANT.

Filed August 7, 2018.    No. A-17-332.

Appeal from the District Court for Buffalo County: WILLIAM T. WRIGHT, Judge. Affirmed.

Shawn R. Erpelding, pro se.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Shawn R. Erpelding (Erpelding) appeals from the denial of his amended verified motion for postconviction relief without an evidentiary hearing. Finding no merit to the arguments raised by Erpelding on appeal, we affirm the denial of his motion.

## II. STATEMENT OF FACTS

In May 2012, Erpelding filed a complaint to establish paternity, custody, visitation, and support of his 4-year-old daughter Grace Erpelding (Grace). In August, a temporary child support order was entered ordering Erpelding to pay $225 per month. In July 2013, the court entered a final order granting custody of Grace to her mother, Diane Southall, and ordering Erpelding to pay $379 per month in child support. Erpelding did not appeal from this final order. Southall began to receive Aid to Dependent Children (ADC) assistance for Grace through the Department of Health and Human Services (DHHS) in August 2012. By operation of law, child support was assigned to

DHHS. See Neb. Rev. Stat. § 43-512.07 (Reissue 2016). Erpelding failed to make any payments on the temporary support order for over a year.

On August 5, 2013, Erpelding was charged with criminal nonsupport based on his failure to pay the first 4 months of temporary support, which were August through November 2012. Erpelding was also charged with being a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 2016). Erpelding did not make any payments for the entire duration of the temporary support order which lasted from August 2012 until July 2013. He made his first payment toward his child support obligation on October 8, 2013, in the amount of $857. Less than a month later, a DHHS enforcement officer was able to collect another $644.95 toward Erpelding's child support obligation.

In 2014, Erpelding was convicted by a jury of four counts of criminal nonsupport for failure to pay 4 months of child support totaling $900. After his sentences were enhanced by the habitual criminal statute, he was sentenced to concurrent terms of 10 to 15 years' imprisonment on each count.

## 1. DIRECT APPEAL

On direct appeal, Erpelding was represented by different counsel. He assigned the following errors: (1) insufficiency of the evidence to support a finding of felony nonsupport; (2) the district court violated the Sixth Amendment of the federal Constitution when it failed to submit to the jury the issue of whether Erpelding's nonsupport violated any court order; (3) the district court erred for failing to require a jury instruction on a lesser-included offense of misdemeanor criminal nonsupport and his trial counsel was ineffective for not requesting one; (4) the district court erred in finding Erpelding was a habitual criminal and enhancing his sentences; and (5) the sentences imposed were excessive and illegal. The Nebraska Supreme Court affirmed Erpelding's convictions and sentences.

## 2. POSTCONVICTION

Within a year of the conclusion of his direct appeal, Erpelding filed a verified motion for postconviction relief, which motion was subsequently amended. The amended motion alleged ineffective assistance of appellate counsel for failing to raise the following six allegations of ineffective assistance of trial counsel on direct appeal: (1) trial counsel was ineffective for failing to file a motion to quash challenging the criminal nonsupport statute under the void-for-vagueness doctrine; (2) trial counsel was ineffective for failing to file a motion to quash challenging whether a criminal nonsupport charge, when charged as a felony and then enhanced pursuant to the habitual criminal act, constitutes impermissible double penalty enhancement; (3) trial counsel was ineffective for failing to investigate, depose, and have Southall served with a subpoena duces tecum requiring that she produce (i) the marriage license issued for her and Erpelding, (ii) a joint account statement, (iii) certain receipts, (iv) certain joint debt statements, and (v) verification of cohabitation as husband and wife; (4) trial counsel was ineffective for failing to investigate, depose, and have his former attorney, Arron Bishop, testify at trial regarding "evidence of [Erpelding]'s financial situation and inability to provide more child support"; (5) trial counsel was ineffective for failing to investigate, depose, and have certain veterans medical experts testify

regarding Erpelding's state of mind and "mental instability" indicating "a diminished capacity to formulate the requisite intention to not provide support" and how his post-traumatic stress disorder and nervous breakdown "significantly diminished [his] capacity to formulate the requisite intent" to commit the offense of criminal nonsupport; and (6) trial counsel was ineffective due to the aggregate effect of the aforementioned claims of trial counsel's failure to investigate.

### 3. DISTRICT COURT ORDER DENYING POSTCONVICTION RELIEF WITHOUT EVIDENTIARY HEARING

The district court appears to have reached beyond Erpelding's "Grounds for Relief" listed in his amended verified motion and addressed matters set forth in Erpelding's statements of fact, arguments, and legal propositions. The district court's order includes findings that all of Erpelding's claims except those for ineffective assistance of appellate counsel were procedurally barred because they were, or could have been, raised on direct appeal and/or were pled as mere conclusions of fact and law without specificity. As such, those claims were dismissed without an evidentiary hearing. The court did go on to address some claims regarding ineffective assistance of trial counsel in more detail.

The district court then addressed Erpelding's claims of ineffective assistance of appellate counsel. First, the district court rejected Erpelding's claim that his appellate counsel was ineffective for failing to raise on appeal trial counsel's failure to file a motion to quash the criminal nonsupport statutes under the void-for-vagueness doctrine. The court found that there was nothing in Erpelding's allegations which demonstrated how or why the use of the criminal nonsupport statutes by the State in this case constituted arbitrary enforcement.

Second, the district court rejected Erpelding's claim that his appellate counsel was ineffective for failing to raise on direct appeal trial counsel's failure to file a motion to quash so as to challenge the State's use of the habitual criminal statute in these circumstances as impermissible double penalty. In support of its claim, Erpelding cited to *State v. Chapman*, 205 Neb. 368, 287 N.W.2d 697 (1980), *disapproved, State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016). In rejecting this contention, the court noted that the *Chapman* decision was generally disapproved by *State v. Abejide, supra*. Moreover, the court distinguished *Chapman* noting that the charges for which Erpelding was convicted were felonies, unlike the charges in *Chapman* which were misdemeanors and which rose to felony status due to repetitive violation pursuant to statute. The court also found that Erpelding's allegations were insufficient to raise a constitutional issue and trial counsel's performance could not be challenged as ineffective for failing to raise a meritless argument.

Third, the district court rejected Erpelding's claim that his appellate counsel was ineffective for failing to raise on appeal trial counsel's failure to fully investigate and depose Southall, failure to fully investigate attorney Bishop to produce specific evidence of Erpelding's inability to provide more child support, and failure to investigate veteran's administration medical experts to produce specific evidence of his diminished capacity to formulate the requisite intent to violate his support obligation. As to each, the district court found all such allegations to be conclusory, speculative, and conjectural and dismissed Erpelding's motion without an evidentiary hearing.

## III. ASSIGNMENTS OF ERROR

On appeal, Erpelding generally assigns error to the district court's refusal to provide an evidentiary hearing, the court's refusal to grant relief for his alleged appellate counsel's errors, and on the basis of newly assigned "plain errors." More specifically Erpelding contends that the district court erred in denying his amended motion for postconviction relief without an evidentiary hearing in that the district court erred in (1) failing to hold an evidentiary hearing after the court caused "notice of the postconviction to be served on the State" thereby demonstrating "that it was satisfied that the motion and the files and records of the case show[ed] that [he]was] entitled to relief" pursuant to the language of Neb. Rev. Stat. § 29-3001(2) (Reissue 2016); and in (2) failing to point out "that the State's own established 'layered ineffectiveness claims analysis' is overly complex, inconsistent, and arbitrary, and, therefore, renders the State's postconviction act inadequate to remedy ineffective assistance of trial counsel claims when the defendant was represented by different counsel on direct appeal than at trial." Brief for appellant at 7.

Erpelding next assigns specific errors regarding each of his 6 ineffective assistance of appellate counsel claims including his claim of aggregate prejudice.

Erpelding then raises two claims of plain error. He contends that his first criminal nonsupport conviction related to a payment obligation allegedly due on August 1, 2012, but that the temporary support order that Erpelding allegedly violated did not issue until August 20, 2012. He also contends that, prior to trial, he made payments in an amount exceeding the amounts which were paid in ADC to Southall. He argues that either one of these alleged faults should void his convictions.

Finally, Erpelding assigns that the district court erred in considering claims included in his original motion for postconviction relief but which he expressly removed from the court's consideration due to his intention to pursue such claims in federal court or for other stated reasons. He also alleged that the court erred in failing to address each ineffective assistance of trial counsel claim as an ineffective assistance of appellate counsel claim. As to these final assignments, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). Erpelding failed to argue these assignments of error in his brief and, as a result, these claims are not properly before this court and will not be considered.

## IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Amaya*, 298 Neb. 70, 902 N.W.2d 675 (2017). The lower court's findings of fact will be upheld unless such findings are clearly erroneous. *Id.*

## V. ANALYSIS

Before addressing the merits of Erpelding's appeal, we note that, like the district court, we take judicial notice of the record from Erpelding's trial which was affirmed in *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015). "A reviewing court considering a motion for

postconviction relief may take judicial notice of the record in the direct appeal." *State v. Smith*, 294 Neb. 311, 321, 883 N.W.2d 299, 308 (2016).

### 1. GENERAL ARGUMENTS COURT FAILED TO
### GRANT EVIDENTIARY HEARING

#### (a) Court's Notice to State

Erpelding claims that the district court erred in failing to grant an evidentiary hearing in connection with his motion for postconviction relief as demonstrated by the explicit language of § 29-3001(2). This section states, in pertinent part:

> Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the county attorney, grant a prompt hearing thereon, and determine the issues and make findings of fact and conclusions of law with respect thereto.

Erpelding argues that, after he filed his motion, the court served notice on the State. Accordingly, Erpelding argues "[b]y causing notice of the postconviction to be served on the State the lower court demonstrated that it was satisfied that the motion and the files and records of the case show that [Erpelding] is entitled to relief and, therefore, the 'prompt hearing thereon' should have been an evidentiary hearing." Brief for appellant at 7. Erpelding misconstrues the statute's language.

> "Nothing in the post-conviction statutes prevents a district court from asking the State to respond to a postconviction motion prior to deciding whether an evidentiary hearing is warranted." *State v. Robertson*, 294 Neb. 29, 39, 881 N.W.2d 864, 874 (2016). See, *State v. McLeod*, 274 Neb. 566, 741 N.W.2d 664 (2007) (trial court did not abuse its discretion in ordering State to file written response to postconviction motion and conducting hearing to determine which files and records it would examine before determining whether to grant defendant an evidentiary hearing on his motion for postconviction relief); *State v. Dean*, 264 Neb. 42, 645 N.W.2d 528 (2002) (Nebraska Supreme Court rejected claim that district court abused its discretion by allowing State to file motion to deny defendant evidentiary hearing prior to determining that he was not entitled to postconviction relief). It is entirely appropriate for a district court to ask the State to respond to a postconviction motion prior to deciding whether an evidentiary hearing is warranted. Erpelding's claim to the contrary is without merit.

#### (b) Layered Ineffectiveness Claims

Erpelding claims that the district court erred
by failing to point out that the State's own established "layered ineffectiveness claims analysis" is overly complex, inconsistent, and arbitrary, and, therefore, renders the State's postconviction act inadequate to remedy ineffective assistance of trial counsel claims when the defendant was represented by different counsel on direct appeal than at trial.

Brief for appellant at 7. We are uncertain what Erpelding means by this argument. That said, this claim was not raised in Erpelding's amended motion for postconviction relief or presented to the

district court and we will not consider it for the first time on appeal. See *State v. Harris*, 294 Neb. 766, 884 N.W.2d 710 (2016).

2. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL CLAIMS

Erpelding assigns specific errors regarding each of his six ineffective assistance of appellate counsel claims. When a claim of ineffective assistance of appellate counsel is based on the failure to raise a claim on appeal of ineffective assistance of trial counsel (a layered claim of ineffective assistance of counsel), an appellate court will look at whether trial counsel was ineffective under the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *State v. McGuire, supra*. If trial counsel was not ineffective, then the defendant was not prejudiced by appellate counsel's failure to raise the issue. *Id*. Much like claims of ineffective assistance of trial counsel, the defendant must show that *but for* counsel's failure to raise the claim, there is a reasonable probability that the outcome would have been different. *Id*. Counsel's failure to raise an issue on appeal could be ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017).

### (a) Void for Vagueness

Erpelding claims that the district court erred in failing to find that his appellate counsel was ineffective for failing to raise on appeal trial counsel's failure to file a motion to quash challenging the nonsupport statute under the void-for-vagueness doctrine. The State contends that this argument is not properly before this court because Erpelding did not challenge the constitutionality of the criminal nonsupport statutes in the lower courts. We disagree. Erpelding is raising, at his first available opportunity, that he received ineffective assistance of appellate counsel due to appellate counsel's failure to raise, on appeal, trial counsel's failure to file a motion to quash challenging the criminal nonsupport statute on void-for-vagueness grounds. Erpelding's ineffective assistance of appellate counsel claim is properly before us.

As mentioned, to establish a right to postconviction relief due to counsel's ineffective assistance, the defendant has the burden, in accordance with *Strickland v. Washington, supra*, to show that counsel's performance was deficient--that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018). Next, the defendant must show that counsel's deficient performance prejudiced the defense of his or her case. *Id*. Under the *Strickland v. Washington* framework, a court may address the two elements, deficient performance and prejudice, in either order. *State v. Torres*, 295 Neb. 830, 894 N.W.2d 191 (2017).

Here, we focus on whether Erpelding's appellate counsel was deficient for failing to appeal Erpelding's trial counsel's failure to challenge the criminal nonsupport statute for which he was convicted as being unconstitutionally void for vagueness. The Nebraska Supreme Court addressed a counsel's alleged failure to raise novel legal constitutional challenges--as it relates to claims of ineffective assistance--in *State v. Ross*, 296 Neb. 923, 899 N.W.2d 209 (2017), and *State v. Sanders*, 289 Neb. 335, 855 N.W.2d 350 (2014). In both cases, the Nebraska Supreme Court held that trial counsel did not perform in a deficient manner by failing to raise a constitutional challenge

- 6 -

to Neb. Rev. Stat. § 28-1212.04 (Reissue 2016). "'[C]ounsel's failure to raise novel legal theories or arguments or to make novel constitutional challenges in order to bring a change in existing law does not constitute deficient performance.'" *State v. Ross*, 296 Neb. at 930, 899 N.W.2d at 215, quoting *State v. Sanders, supra*. Accord *Engle v. Isaac*, 456 U.S. 107, 134, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982).

The same rationale applies here. We cannot say that Erpelding's trial counsel was deficient in having failed to raise the novel legal argument that Neb. Rev. Stat. § 28-706 (Reissue 2016) is unconstitutionally void for vagueness, or that his appellate counsel was deficient for having not assigned that claim on direct appeal. As the Supreme Court stated in *Ross*: ""'The Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not [e]nsure that defense counsel will recognize and raise every conceivable constitutional claim."'" 296 Neb. at 930-31, 899 N.W.2d at 215, quoting *State v. Sanders, supra*. Erpelding's postconviction motion on this subject did not contain factual allegations which would constitute deficient performance under this claim.

(b) Double Penalty Enhancement

Next, he claims that the district court erred in failing to find that his appellate counsel was ineffective for not raising on appeal trial counsel's failure to file a motion to quash so as to challenge the State's use of the criminal enhancement statutes as impermissible double penalty. Erpelding equates his case to the Nebraska Supreme Court's holding in *State v. Chapman*, 205 Neb. 368, 287 N.W.2d 697 (1980), *disapproved, State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016). In *Chapman*, the court held that "offenses which are felonies because the defendant has been previously convicted of the same crime do not constitute 'felonies' within the meaning of prior felonies that enhance penalties under the habitual criminal statute." 205 Neb. at 370, 287 N.W.2d at 698. The court disapproved of the use of such prior convictions under the criminal statute because such use resulted in impermissible "double penalty enhancement through application of both a specific subsequent offense statute and a habitual criminal statute." 205 Neb. at 370, 287 N.W.2d at 699. Erpelding contends that, if trial counsel had filed a motion to quash, the motion would have been sustained and his sentences would not have been enhanced under the habitual criminal statutes.

Erpelding's argument is flawed. We note that in *Abejide*, which disapproved *Chapman*, the Supreme Court clarified its holding in *Chapman* by distinguishing between the "triggering crime," which must be a felony and which can trigger the application of § 29-2221, and prior convictions for which the triggering crime can be enhanced so long as those prior convictions resulted in imprisonment for not less than 1 year--regardless of whether they were the result of enhancement. Fatal to Erpelding's argument is the fact that his criminal nonsupport convictions under § 28-706 were felony offenses, not offenses which became felonies as the result of statutory enhancement. Because his violation was a felony by statute, it was a triggering crime which supported the application of criminal enhancement based upon Erpelding's prior convictions. A motion to quash on this issue would have been denied and appellate counsel was not ineffective for failing to raise the matter on direct appeal. "[A]s a matter of law, counsel cannot be ineffective for failing to raise

- 7 -

a meritless argument." *State v. Ely*, 295 Neb. 607, 623, 889 N.W.2d 377, 392 (2017). Therefore, the files and records affirmatively show that Erpelding was not entitled to relief on this claim.

(c) Alleged Failure to Investigate Southall

Erpelding claims that the district court erred in finding appellate counsel deficient for failing to appeal his trial counsel's ineffectiveness in failing to fully investigate and depose Southall and failing to present an affidavit from Southall to the jury. Erpelding apparently claims that, had his trial counsel sufficiently pursued Southall, she could have produced (i) a marriage license application, (ii) a joint account statement, (iii) certain receipts, (iv) certain joint debt statements, or (v) testimony verifying their cohabitation as husband and wife. In sum, he argues his counsel's lack of investigation of Southall prejudiced him in that such evidence would have exonerated him at trial.

Erpelding's claims of prejudice are flawed for three reasons. First, if Erpelding was cohabitating with Southall, he does not explain why he could not simply obtain these materials himself. Because he could have provided the evidence directly, trial counsel's alleged failure to require Southall to bring specific documentation fails to show prejudice. Second, Southall was called as a defense witness at trial and testified inconsistently regarding whether Erpelding had ever provided support for their daughter. Additionally, Erpelding's counsel attempted to offer Southall's affidavit which Erpelding claims would have further supported the proposition that Erpelding paid her support directly, but the court sustained an objection to its receipt. Although Erpelding may have been disappointed in the result of Southall's testimony, she addressed the possibility of him having paid support directly to her or directly through other avenues of support. Third, whether or not the parties were cohabitating or contemplating marriage did not change the fact that Erpelding was court-ordered to pay temporary child support on behalf of Grace. The court ordered payment of temporary support to Southall by Erpelding, and the missed payments at issue in this case were assigned to DHHS due to prior ADC assistance provided by DHHS to Southall. See, *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015) (finding that support payments in issue were assigned to DHHS to be paid by Erpelding); Neb. Rev. Stat. § 43-512.07 (providing for assignments of child support to DHHS when party is provided ADC). Erpelding was given notice that the support payments were owed to DHHS. See *State v. Erpelding, supra* (finding Erpelding was given monthly notice that support payments were owed to DHHS and he was also provided notice by DHHS of intent to suspend his operator's and recreational licenses due to his nonpayment). Erpelding's failure to timely pay DHHS was the subject of his charges, and his living status with Southall was of no consequence or relevance to the charges. See Neb. Rev. Stat. § 43-1404 (Reissue 2016) (stating that "liability of the father or mother of a child for its support shall be discharged by compliance with the terms of a judicial decree for support"). See, also, *Eliker v. Eliker*, 206 Neb. 764, 295 N.W.2d 268 (1980) (explaining that when a court orders the payment of child support, it means to have such order followed); *Jafari v. Jafari*, 204 Neb. 622, 284 N.W.2d 554 (1979) (providing that issue of provision for support and maintenance of minor child is not controllable by agreement of parties, but, rather, by court upon facts and circumstances as disclosed to it). Thus, Erpelding has failed to allege how the evidence concerning his cohabitation with Southall, which Erpelding claims his trial court was ineffective in failing to

uncover and provide to the jury, prejudiced his convictions. In light of all of the above, we find this assignment is without merit.

(d) Alleged Failure to Investigate, Depose,<br>and Call Attorney Bishop

Erpelding next argues the district court erred in failing to find Erpelding's appellate counsel was deficient in failing to appeal his trial counsel's deficient failure to investigate, depose, and call his former attorney as a witness at trial. In support thereof, Erpelding argues that his former attorney, who had represented Erpelding in several criminal and civil matters, could have testified to Erpelding's financial situation and inability to provide support.

We quickly dispense with this argument. A defendant may present evidence to establish an "'inability to pay'" in order to disprove intent in a criminal nonsupport support case charged under § 28-706. *State v. Erpelding*, 292 Neb. at 364, 874 N.W.2d at 277. Erpelding did put on evidence of his lack of ability to pay in connection with the charges of criminal nonsupport and to suggest that calling his previous attorney to testify about Erpelding's financial situation would change the result of his trial is purely speculative and lacking in any substance. The Nebraska Supreme Court has previously observed that a petitioner's postconviction claims that his or her trial counsel was ineffective in failing to investigate possible defenses are too speculative to warrant relief if the petitioner fails to allege what exculpatory evidence that the investigation would have procured and how it would have affected the outcome of the case. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015); *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

Accordingly, Erpelding's claim is insufficient to show a reasonable probability that the outcome of the trial would have been different but for the failure to call an attorney, that represented Erpelding in other matters, to share what he knew, if anything, about Erpelding's financial situation. That allegation is speculative, nonspecific, and conclusory and the district court did not err in rejecting it without an evidentiary hearing.

(e) Alleged Failure to Investigate, Depose,<br>and Call Medical Witnesses

Erpelding argues the district court erred in failing to find Erpelding's appellate counsel was deficient in failing to appeal his trial counsel's deficient failure to investigate, depose, and call former treating doctors at the Grand Island/Western Iowa Veteran's Hospital. He argues that from 2012 to 2014, he was demonstrating some mental instability "being indicatory of a diminished capacity to formulate the requisite intention to not provide support." Brief for appellant at 47. In that regard, Erpelding argues that his trial counsel "should at the very least have investigated [Drs. Sullivan and Duke] in the due course of remaining appraised of the Appellant's progress." *Id.*

Erpelding does not plead that Drs. Sullivan and Duke, if called, would have testified that Erpelding lacked the mental capacity to commit a crime. Instead, his claim is postured as one where trial counsel had an obligation to investigate whether Erpelding's doctors would have testified to his lack of capacity. In *State v. Thorpe*, 290 Neb. 149, 162, 858 N.W.2d 880, 890 (2015), the Nebraska Supreme Court held that "[i]n assessing postconviction claims that trial counsel was ineffective for failing to call a particular witness, we have upheld the dismissal without

an evidentiary hearing where the motion did not include specific allegations regarding the testimony which the witness would have given if called." Here, Erpelding does not allege that Drs. Sullivan and Duke would have testified that he lacked the requisite mental capacity to commit the crime for which he was charged. Instead, he argues that trial counsel had an obligation to further explore the possibility.

Without the requirement of such specific allegations, the postconviction court would effectively be asked to conduct a discovery hearing to determine if there exists anywhere in the world some evidence favorable to defendant's position. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018). Here, Erpelding has not pled sufficient specific allegations to demonstrate any prejudice and the district court properly dismissed this assignment.

### (f) Failure to Address Claim of Aggregate Prejudice

Erpelding also contends that the district court erred in failing to specifically address his claim regarding the aggregate prejudice resulting from his appellate counsel's failure to raise claims of ineffectiveness of his trial counsel. He claims that the aggregate prejudice resulting from trial counsel's failures to subject the State's case to meaningful adversarial testing rendered the trial result unreliable.

We agree that the district court's order does not explicitly rule on this claim; however, the court's order denied each of Erpelding's claims of ineffectiveness of appellate counsel. As a result, it follows that the court implicitly denied Erpelding's aggregate claim regarding the ineffectiveness of appellate counsel. Having considered and rejected Erpelding's claims of error regarding ineffectiveness of appellate counsel to raise trial counsel's failure to investigate, depose, and call witnesses at trial, it follows that Erpelding's claim concerning the aggregate prejudice from these claims must also fail.

### 3. PLAIN ERROR

Erpelding also raises two claims of plain error. First, he contends that his first criminal nonsupport conviction related to a child support obligation from August 1, 2012, but that the temporary support order relating to that change did not issue until August 20. We interpret Erpelding's claim to assert that his conviction, based upon the August child support order, is void because the order requiring payment of child support was not entered until August 20. We consider this claim because of the rule that a void judgment may be attacked at any time in any proceeding. *State v. Ewer*, 194 Neb. 203, 230 N.W.2d 609 (1975).

We have reviewed that Buffalo County District Court order filed August 20, 2012, which was received into evidence at Erpelding's trial as exhibit 13. The order, which obligated Erpelding to pay temporary child support in the amount of $225 per month, provides, on its face, that the support was to retroactively commence on August 1. At the time that the district court entered the final resolution of custody and support on July 15, 2013, Erpelding could have appealed the court's decision to make his August 2012 child support obligation retroactive to August 1, but he chose not to do so. See *State v. Erpelding, supra*. See, also, *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013) (whether child support order should be retroactive is entrusted to trial court's discretion and appellate court will affirm its decision absent abuse of discretion). We note that

Erpelding did not make any payments on the temporary order until October 2013. See *State v. Erpelding, supra*. His claim of plain error regarding the August 20, 2012, temporary child support order is without merit.

Next, Erpelding contends that plain error occurred in that his criminal nonsupport convictions are void because, prior to trial, he paid more than the amounts which were paid in ADC to Southall. Pursuant to § 28-706(1), "[a]ny person who intentionally fails, refuses, or neglects to provide proper support which he or she knows or reasonably should know he or she is legally obliged to provide to a spouse, minor child, minor stepchild, or other dependent commits criminal nonsupport." In Erpelding's direct appeal, the Nebraska Supreme Court considered the impact of Erpelding's child support payments during the 1-month period from October 8 to November 8, 2013, stating that his payments of over 5 months' worth of child support payments during that 1-month period, in order to have his license reinstated, suggested that "Erpelding had the ability to pay before that time, but simply chose not to." *State v. Erpedling*, 292 Neb. at 365, 874 N.W.2d at 278. The Supreme Court considered the timeliness of Erpelding's payment and rejected that it was a defense.

## VI. CONCLUSION

We affirm the district court's denial of Erpelding's amended motion for postconviction relief.

AFFIRMED.