IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DIEGO-ANTONIO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

PEDRO DIEGO-ANTONIO, APPELLANT.

Filed December 18, 2018.    No. A-17-817.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed.

Pedro Diego-Antonio, pro se.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Pedro Diego-Antonio appeals the district court for Douglas County's denial of his motion for postconviction relief without an evidentiary hearing. On appeal, Diego-Antonio contends the district court erred in failing to grant him postconviction relief because his guilty plea was involuntary, his trial and appellate counsel was ineffective, the statute under which he was convicted is unconstitutional, and he was entitled to the appointment of counsel for postconviction proceedings. For the reasons that follow, we affirm the decision of the district court.

## II. BACKGROUND

On June 22, 2014, Diego-Antonio was driving a motor vehicle near the intersection of 38th and Dodge Streets in Omaha, Nebraska. As Edward Horowitz, M.D., crossed the street in a crosswalk with the correct traffic control signal, Diego-Antonio drove through the intersection.

- 1 -

Diego-Antonio hit Horowitz with his automobile, causing Horowitz to become airborne and hit a moving van before landing. Diego-Antonio left the scene but was located a short time later.

Officers who located Diego-Antonio said he exhibited signs of intoxication and impairment. Later testing revealed that Diego-Antonio's blood alcohol content (BAC) was .246. After officers advised Diego-Antonio of his rights, he stated that he was driving the vehicle that struck a person in the crosswalk near the intersection of 38th and Dodge Streets. An autopsy showed that Horowitz died as the result of massive blunt force trauma attributable to the traffic collision.

Diego-Antonio was charged with motor vehicle homicide with prior driving under the influence (DUI) conviction, a Class II felony. At the plea hearing on February 25, 2015, Diego-Antonio stated that he had received a second-grade education in Guatemala, his native home. In his brief, Diego-Antonio stated that Q'anjob'al is his first language and that Spanish is his second language. At all times during both the plea hearing and sentencing, a Spanish interpreter was present for Diego-Antonio.

During the plea hearing, the State offered for enhancement purposes a certified document from the Douglas County Court that showed Diego-Antonio had been convicted of aggravated driving under the influence in 2011 under a City of Omaha ordinance for which he was sentenced to 9 months' probation. He entered a plea of guilty to the current charge, and the court advised him of those rights that he would forfeit by entering a guilty plea. The State provided a sufficient factual basis. The court was satisfied that Diego-Antonio entered his plea freely, knowingly, intelligently, and voluntarily. Thus, the court found Diego-Antonio guilty of motor vehicle homicide and ordered that a presentence investigation be conducted before sentencing.

Sentencing occurred on April 22, 2015. During sentencing, one of Horowitz' brothers read a victim impact statement to the court. Diego-Antonio spoke as well, asking for forgiveness from the court and Horowitz' family. The court found that while Diego-Antonio at times accepted responsibility for his actions, he also placed blame on alcohol and had not changed his behavior after his first DUI conviction. After reviewing the presentence investigation report (PSR) and considering the seriousness of the offense and the possibility of Diego-Antonio's rehabilitation, the court sentenced him to 35 to 40 years' imprisonment and gave him credit for 305 days of time served.

Diego-Antonio appealed, alleging only that his sentence was excessive. Diego-Antonio's counsel was the same at trial and on direct appeal. In response to Diego-Antonio's appeal, the State moved for summary affirmance, which this court granted on September 1, 2015.

On August 1, 2016, Diego-Antonio moved for postconviction relief, requested an evidentiary hearing, and further requested that counsel be appointed to represent him. In his motion for postconviction relief, Diego-Antonio argued first, that his plea was not made freely, knowingly, intelligently, and understandingly due to a conflict between the information and the plea hearing as to whether he was pleading to DUI or motor vehicle homicide; second, that his counsel provided ineffective assistance for myriad reasons; and third, that Neb. Rev. Stat. § 28-306 (Reissue 2016) is unconstitutional as applied to his conviction because his prior 2011 DUI conviction under the Omaha municipal code is not a valid prior conviction.

The district court denied Diego-Antonio's motion for postconviction relief without an evidentiary hearing and without appointing counsel. Although the court examined a few of Diego-Antonio's specific arguments related to ineffective assistance of counsel, it noted that he failed to set forth any facts related to prejudice and that his ineffective assistance of counsel claim therefore warranted dismissal. The district court also found that Diego-Antonio's arguments related to his plea were "simply untrue, inaccurate and . . . not supported by the official court record." Thus, after finding Diego-Antonio presented no justiciable issues for postconviction relief, the district court denied his request for the appointment of counsel and denied his motion for postconviction relief without an evidentiary hearing.

Diego-Antonio now appeals.

### III. ASSIGNMENTS OF ERROR

Diego-Antonio assigns, restated, that the district court erred in finding no merit in his claims (1) that his guilty plea was involuntary, (2) that his trial and appellate counsel was ineffective, and (3) that § 28-306(3)(c) is unconstitutional, and erred in denying his motion for postconviction relief without an evidentiary hearing or the appointment of counsel.

### IV. STANDARDS OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018).

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. *State v. Ross*, 296 Neb. 923, 899 N.W.2d 209 (2017). When reviewing a question of law, an appellate court resolves the question independently of the lower court's conclusion. *Id*.

We review the failure of the district court to provide court-appointed counsel in a postconviction proceeding for an abuse of discretion. *State v. Taylor*, 300 Neb. 629, 915 N.W.2d 568 (2018).

### V. ANALYSIS

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *State v. Vela*, 297 Neb. 227, 900 N.W.2d 8 (2017). Thus, in a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *Id*.

Relief under the Nebraska Postconviction Act is a very narrow category of relief. *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018). In a postconviction proceeding, an evidentiary hearing is not required when (1) the motion does not contain factual allegations which, if proved, constitute an infringement of the movant's constitutional rights; (2) the motion alleges only conclusions of fact or law; or (3) the records and files affirmatively show that the defendant is entitled to no relief. *Id*.

Notably, a petition for postconviction relief is not merely a second direct appeal. "It is well established that a petition for postconviction relief may not be used to obtain review of issues that were or could have been reviewed on direct appeal. Any attempts to raise issues at the postconviction stage that were or could have been raised on direct appeal are procedurally barred." *State v. Dubray*, 294 Neb. 937, 949, 885 N.W.2d 540, 552 (2016).

### 1. ENTRY OF GUILTY PLEA

In this postconviction appeal, Diego-Antonio first contends that his guilty plea was involuntary, invalid, void, or voidable and obtained in violation of various constitutional protections. Diego-Antonio did not raise these claims in his direct appeal, and he does not phrase this error in terms of ineffective assistance of counsel. The State, like the district court, notes that Diego-Antonio could have, but did not, raise these issues in his direct appeal, which renders them procedurally barred for purposes of the present action. See *State v. Dubray, supra*. We agree and thus find that the district court did not err when it denied these procedurally barred claims without an evidentiary hearing

### 2. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e." The right to counsel has been interpreted to include the right to effective counsel. *State v. Dubray, supra*. Under the standard established by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), claims of ineffective assistance of counsel by criminal defendants are evaluated using a two-prong analysis: first, whether counsel's performance was deficient, and second, whether the deficient performance was of such a serious nature so as to deprive the defendant of a fair trial. *State v. Dubray, supra*.

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel at trial or on direct appeal, the defendant has the burden, in accordance with *Strickland v. Washington, supra*, to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Lopez*, 274 Neb. 756, 743 N.W.2d 351 (2008). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id*. In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

In determining whether a trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Miner*, 273 Neb. 837, 733 N.W.2d 891 (2007). An appellate court gives due deference to defense counsel's discretion in formulating trial tactics. *Id*. Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief. *State v. Allen, supra*.

(a) Failure to Object to Entry of Guilty Plea

Diego-Antonio contends that his attorney and the district court failed to inform him of the charge he faced and its elements in a manner that he could comprehend due to his second-grade education, illiteracy, and inability to understand the Spanish language. However, in his motion for postconviction relief, he stated only generally that he was not advised or informed of the charge in a manner he could comprehend. In a separate unrelated portion of his motion, he does recite that Spanish is not his first language but only asserts that he is unable to read, speak, and write English. When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *State v. Davlin*, 265 Neb. 386, 658 N.W.2d 1 (2003). Thus, we disregard Diego-Antonio's specific contentions regarding his level of education, literacy, and linguistic aptitude--and we examine only whether counsel was ineffective because she did not assure that Diego-Antonio comprehended the offense to which he entered his guilty plea.

With respect to this argument, we agree with the district court, which pointed out in its order that Diego-Antonio's "representations are simply . . . not supported by the official court record." The record before us contains the plea colloquy that occurred on February 25, 2015, at which an interpreter appeared for Diego-Antonio's benefit. The record shows that Diego-Antonio properly responded to the district court judge's numerous questions, indicating his ability to comprehend--albeit through a court interpreter--the proceedings that occurred.

In his brief on appeal, Diego-Antonio states that he believed the crime to which he pled was "a class I misdemeanor punishable by a maximum of one year imprisonment, or one thousand dollars fine, or both and a minimum of none." Brief for appellant at 16. The record clearly contradicts this argument. The word "misdemeanor" was never used on the record during the plea colloquy. Moreover, on the record, the district court advised Diego-Antonio as follows: "the maximum possible penalty for this charge is 50 years imprisonment and the minimum is one year. In addition, the Court - part of the sentence could be that your driver's license be revoked for a period of 15 years." When asked, Diego-Antonio confirmed that he understood the possible penalties.

Based on the foregoing, Diego-Antonio has failed to demonstrate that counsel's performance was deficient with respect to his entry of a guilty plea. The record shows no reason that Diego-Antonio's counsel, or another lawyer with ordinary training and skill in criminal law, would have determined Diego-Antonio did not comprehend the charge to which he pled guilty. As such, we find that the district court did not err in denying Diego-Antonio's claim without an evidentiary hearing.

(b) Failure to Withdraw Plea

Diego-Antonio next contends his counsel was ineffective because she did not move to withdraw his guilty plea. In support of this proposition, Diego-Antonio merely restates much of his above claim that his plea was to a crime he did not comprehend. We found above that the record does not support Diego-Antonio's claim that he failed to comprehend the charge to which he pled or the ramifications of his entering a guilty plea. The record reflects that Diego-Antonio

willingly and knowingly entered a guilty plea. Thus, we find that the district court did not err in denying Diego-Antonio's claim without an evidentiary hearing.

### (c) Ineffective Assistance of Appellate Counsel

Diego-Antonio next argues that his appellate counsel ought to have "argued on appeal that the district court erred and abused its discretion by allowing [Diego-Antonio] to withdraw his not guilty plea and enter a plea of guilty without just reason." Brief for appellant at 18. Diego-Antonio contends that his "sudden change of plea without receiving any benefit should have raised red flags." *Id.* Absent evidence of coercion or other impropriety, a defendant's decision to change his plea rarely raises red flags. See *State v. Ditter*, 232 Neb. 600, 441 N.W.2d 622 (1989). Moreover, the district court accepted Diego-Antonio's guilty plea only after an appropriate plea colloquy. See *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986).

There would be no merit in assigning error on appeal that the district court abused its discretion in accepting Diego-Antonio's guilty plea. Counsel cannot be ineffective for failing to raise meritless claims. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017). Diego-Antonio's appellate counsel did not perform deficiently in not assigning error to the district court's acceptance of his change of plea. Thus, we find that the district court did not err when it denied this claim without an evidentiary hearing.

### (d) Intoxication Defense

Diego-Antonio next argues that his counsel was ineffective for not advising him that intoxication was a defense to motor vehicle homicide. Intoxication is not a defense to the charge Diego-Antonio faced, however, and thus his counsel did not perform deficiently in this regard. As codified in 2011, intoxication is ordinarily not a defense to criminal responsibility:

> A person who is intoxicated is criminally responsible for his or her conduct. Intoxication is not a defense to any criminal offense and shall not be taken into consideration in determining the existence of a mental state that is an element of the criminal offense unless the defendant proves, by clear and convincing evidence, that he or she did not (1) know that it was an intoxicating substance when he or she ingested, inhaled, injected, or absorbed the substance causing the intoxication or (2) ingest, inhale, inject, or absorb the intoxicating substance voluntarily.

Neb. Rev. Stat. § 29-122 (Reissue 2016). The record shows that Diego-Antonio admitted to drinking approximately 20 beers before the accident, and his BAC was .246 when he was tested shortly after the accident. Diego-Antonio never argued that he was unaware that beer is an intoxicating substance, and he acknowledged freely ingesting it. His knowing and voluntary intoxication is well documented in the record.

Moreover, § 28-306(3)(c) provides that motor vehicle homicide is a Class II felony if the proximate cause of the death of another is the operation of a motor vehicle by one who is under the influence of alcohol in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2010). Intoxication is therefore made part of the crime and not a defense to the crime. Based on the foregoing, we find

that the district court did not error in failing to grant an evidentiary hearing for Diego-Antonio's claim.

### (e) Prior Conviction

Diego-Antonio next asserts that his counsel was ineffective for failing to challenge the use of his 2011 DUI conviction to enhance the present conviction. Exhibit 4, which was included in the record presented for our review, shows that Diego-Antonio pled no contest and was found guilty of first-offense DUI on November 3, 2011. He was sentenced to serve 9 months' probation and 120 hours' community service, which he successfully completed and was discharged therefrom on July 25, 2012. Diego-Antonio lists seven specific points supporting his proposition that his 2011 conviction cannot enhance the present conviction. These seven points can be regrouped into arguments that a conviction under a city ordinance cannot enhance a conviction under § 28-306 and arguments that are collateral attacks on his 2011 conviction. Neither line of argument has merit.

Section 28-306(3)(c) specifically provides that motor vehicle homicide is a Class II felony if the proximate cause of the death of another is the operation of a motor vehicle by one who is under the influence of alcohol in violation of § 60-6,196 and "if the defendant has a prior conviction for a violation . . . *under a city or village ordinance*." (Emphasis added.) Thus, Diego-Antonio's arguments that his 2011 conviction under a city ordinance cannot now be used to enhance the present offense flies in the face of our relevant law.

Collateral attacks on previous DUI convictions are impermissible unless the challenge is grounded upon the court's lack of jurisdiction over the parties or subject matter or entail a violation of the defendant's due process rights to appeal or rights to counsel in violation of the Sixth Amendment. *State v. Anderson*, 279 Neb. 631, 781 N.W.2d 55 (2010). Diego-Antonio's arguments are primarily collateral attacks regarding the voluntariness of his 2011 plea and thus are not based on the court's lack of jurisdiction or violations of his due process rights to appeal or to counsel. Moreover, our record reflects that Diego-Antonio was represented by counsel during the 2011 proceedings. He unsuccessfully appealed his 2011 conviction and was represented by counsel during that appeal as well. Accordingly, his collateral attacks of his 2011 conviction are impermissible. Therefore, we find that the district court did not err in failing to grant an evidentiary hearing for this claim.

### (f) Plea Bargain

Diego-Antonio contends that his counsel provided ineffective assistance because she did not secure a beneficial plea bargain. In his brief on appeal, Diego-Antonio makes only a bare assertion that his counsel was ineffective for not securing him some benefit in exchange for his guilty plea. He articulates no facts indicating how counsel may have secured a benefit in exchange for his plea or what that benefit may have been. Moreover, he does not contend that he would not have entered the plea but for counsel's ineffectiveness. Diego-Antonio merely argues that the lack of a benefit received in exchange for his guilty plea must mean that his counsel was ineffective somehow.

To show prejudice when the alleged ineffective assistance relates to the entry of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have entered the plea and would have insisted on going to trial. *State v. Crawford*, 291 Neb. 362, 865 N.W.2d 360 (2015). Because Diego-Antonio fails to show or even allege prejudice, his claim that counsel was ineffective because she did not secure a beneficial plea bargain fails. Accordingly, we find that the district court did not err in failing to grant an evidentiary hearing for this claim.

(g) Suppression Under Vienna Convention on Consular Relations

Diego-Antonio next argues that his counsel was ineffective because she did not file a motion to suppress based on alleged violations of the Vienna Convention on Consular Relations. Ignoring that Diego-Antonio provides no evidence that he is a foreign national to whom the Vienna Convention on Consular Relations provides certain rights, suppression is not a proper remedy for a violation of the Vienna Convention on Consular Relations. See *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 126 S. Ct. 2669, 165 L. Ed. 2d 557 (2006). Because suppression is not a proper remedy for violations of the Vienna Convention on Consular Relations, there would have been no merit in Diego-Antonio's counsel filing such a motion to suppress. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Williams, supra*. Therefore, we find that the district court did not err in failing to grant an evidentiary hearing for this claim.

(h) Expert Witness on Intoxication

Diego-Antonio alleges that his counsel provided ineffective assistance because she did not offer during a pretrial motion to suppress the testimony of an expert witness on intoxication and its effects. Diego-Antonio says the expert witness could have testified that he was so intoxicated as to be unable to understand the meaning or incriminating effect of the statements he made to officers.

In assessing postconviction claims of ineffective assistance of counsel for failure to call a particular witness, our courts have upheld the dismissal without an evidentiary hearing where the motion did not include specific allegations regarding the testimony which the witness would have given if called. *State v. Dubray, supra*. A claim must include more than mere conclusory allegations. An appellant must allege sufficient facts which, if proved, would establish a reasonable probability that the outcome of his case would have been different if his trial counsel had called or interviewed the witnesses he mentions. See *State v. Marks*, 286 Neb. 166, 835 N.W.2d 656 (2013).

In his brief on appeal, Diego-Antonio does not state with specificity what expert witness ought to have been called during the hearing on his motion to suppress. He does not name a particular expert. He does not state the particular testimony that such expert would offer. He does not establish a reasonable probability that the outcome of the hearing on his motion to suppress would have been different if an expert were called to testify on his behalf. Because Diego-Antonio makes no specific allegations regarding his claim that his counsel was ineffective for failing to call an expert witness, we find that the district court did not err in failing to grant an evidentiary hearing for this claim.

(i) Failure to Investigate

Diego-Antonio next argues that his counsel provided ineffective assistance because she failed to investigate. Primarily, he argues that his counsel ought to have deposed the moving van driver and investigated the traffic signals at the time of the accident. The crux of Diego-Antonio's argument is that a complete investigation would have revealed his conduct to not be the cause of Horowitz' death. As the State notes, Diego-Antonio omits a showing of prejudice related to this claim. Without taking responsibility for the omission, Diego-Antonio appears to admit that he fails to show prejudice related to this claim: "In the case at hand, any evidence of counsel's deficiency that resulted in prejudice is missing from the record precisely because of the incompetence of counsel." Brief for appellant at 40-41. We agree that prejudice was not--and cannot--be shown in relation to this claim because Diego-Antonio's conduct is unquestionably the proximate cause of Horowitz' death.

Criminal conduct is a proximate cause of the event if the event in question would not have occurred but for that conduct. *State v. Irish*, 292 Neb. 513, 873 N.W.2d 161 (2016). A "proximate cause" is a moving or effective cause or fault which, in the natural and continuous sequence, unbroken by an efficient intervening cause, produces a death or injury and without which the death or injury would not have occurred. *Id*. Three basic requirements must be met in establishing proximate cause: (1) that without the misconduct, the injury would not have occurred, commonly known as the "but for" rule; (2) that the injury was a natural and probable result of the misconduct; and (3) that there was no efficient intervening cause. *Id*.

Regardless of the results of investigating the other driver or the state of the traffic signals just before the accident occurred, Diego-Antonio's act of driving under the influence would remain the proximate cause of Horowitz' death. Thus, Diego-Antonio is unable to show how he was prejudicially affected by this lack of investigation. We therefore find that the district court did not err in failing to grant an evidentiary hearing for this claim.

(j) Sentencing

Diego-Antonio next argues that his appellate counsel was ineffective because she failed to argue on appeal that the district court erred in not considering all relevant sentencing factors. Specifically, Diego-Antonio contends that the district court ignored his age, mentality, education, and social and cultural background. Diego-Antonio acknowledges that his appellate counsel assigned as error and argued that his sentence was excessive.

We note that Diego-Antonio's direct appeal assigned the district court erred in imposing an excessive sentence. At that time, we thoroughly reviewed the record, including the district court's consideration of relevant sentencing factors, and summarily affirmed Diego-Antonio's sentence.

A basic tenet of Nebraska law provides that an appellant has the responsibility of including within the bill of exceptions matters from the record which the party believes are material to the issues presented for review. Neb. Rev. Stat. § 25-1140 (Reissue 2016); *State v. Saylor*, 294 Neb. 492, 883 N.W.2d 334 (2016). Because a bill of exceptions is the only manner of presenting evidence to an appellate court, evidence cited but not included within the bill of exceptions may

not be considered. *State v. Saylor, supra*. Without the benefit of a proper record, errors cannot be considered. *Id*.

The bill of exceptions presented to us does not include a copy of Diego-Antonio's brief on direct appeal. Thus, we cannot determine the facial veracity of Diego-Antonio's claim that counsel failed to argue on appeal that the district court erred in not considering all relevant sentencing factors. Without making that initial determination, we certainly cannot move on to evaluate the merits of Diego-Antonio's argument. In the absence of a proper record, we will not consider this assigned error.

### 3. CONSTITUTIONALITY OF § 28-306(3)(c)

Diego-Antonio argues that § 28-306(1)(3)(c) is unconstitutional, but it appears he meant § 28-306(3)(c) as the former does not actually exist. Notably, Diego-Antonio does not assert this argument in the vein of ineffective assistance of counsel. This argument could have been raised in Diego-Antonio's direct appeal, but it was not. Thus, it is now procedurally barred, and we will not consider it. "It is well established that a petition for postconviction relief may not be used to obtain review of issues that were or could have been reviewed on direct appeal. Any attempts to raise issues at the postconviction stage that were or could have been raised on direct appeal are procedurally barred." *State v. Dubray*, 294 Neb. 937, 949, 885 N.W.2d 540, 552 (2016).

### 4. DENIAL OF REQUEST FOR APPOINTMENT OF POSTCONVICTION COUNSEL

Diego-Antonio's final argument is that the district court erred by denying his request for appointment of counsel to represent him in the postconviction proceedings. There is no federal or state constitutional right to an attorney in a state postconviction proceeding. *State v. Custer*, 298 Neb. 279, 903 N.W.2d 911 (2017). Whether counsel is to be appointed in postconviction relief proceedings is discretionary with the trial court. Neb. Rev. Stat. § 29-3004 (Reissue 2016). Where the assigned errors in the postconviction petition before the district court are either procedurally barred or without merit, establishing that the postconviction action contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint appellate counsel for an indigent defendant. *State v. Custer, supra*. Having determined that Diego-Antonio's motion for postconviction relief presented no justiciable issues, the district court did not abuse its discretion in denying Diego-Antonio's motion for appointment of counsel.

### VI. CONCLUSION

For the reasons discussed above, we affirm the judgment of the district court dismissing Diego-Antonio's motion for postconviction relief without an evidentiary hearing and denying his request for postconviction counsel.

AFFIRMED.